UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
══════════════════════════════════════════════

DOMINGO P. GUERRA,

                    Plaintiff,

v.                                          5:08-CV-0028  (NPM/GHL)

STEPHEN C. JONES,
Syracuse City School District
Superintendent for the 2004-2005
School Year, et al.,

                    Defendants.


══════════════════════════════════════════════

APPEARANCES:

Domingo P. Guerra, Pro Se Plaintiff

Ferrara, Fiorenza, Larrison, Barrett & Reitz, P.C.        Miles G. Lawlor, Esq.
Attorney for Defendants
5010 Campuswood Drive
East Syracuse, New York 13057


Neal P. McCurn, Senior United States District Judge

### MEMORANDUM-DECISION and ORDER

        Plaintiff Domingo P. Guerra ("Guerra") brings this job discrimination action

pursuant to Title VII of the Civil Rights Act of 1964, as amended, codified at 42

U.S.C. §§ 2000 et seq. ("Title VII"); and the Age Discrimination in Employment

Act ("ADEA"), 29 U.S.C. §§ 621 et seq.  Named defendants are Stephen C. Jones,

Syracuse City School District ("SCSD") Superintendent for the 2004-2005 School

Year; Daniel Lowengard, SCSD Superintendent; Ann Sanzone ("Sanzone"),

Assistant Director of Personnel; Joan O'Shea ("O'Shea"), Principal; Colleen

Brennan ("Brennan"), Vice Principal; Nancy Zarach ("Zarach"), SCSD Math

Coordinator; Barbara Warren ("Warren"), Roberts School In School Suspension

Supervisor; SCSD Board members Ned Deuel, Laurie Menkin, Calvin Corridors,

Cynthia Kirby, Dorothy Matthews, Nancy McCarty, and Kim Rohadfax-Ceaser;

and John Does.

Currently before the court is defendants' motion for summary judgment

(Doc. No. 87) on the Title VII and ADEA claims, as well as an additional six

motions submitted by the plaintiff.  Eight more motions largely pertaining to

discovery matters were dismissed on February 16, 2010 by Magistrate Judge

George Lowe .[1] Doc. No. 103.  For the reasons set forth below, the defendants'

motion for summary judgment is granted in part and denied in part.  The plaintiff's

pending motions are denied as moot.

## I.    Facts and Procedural History

The following facts relevant to the summary judgment motion before the

---

[1]    The court notes that on May 11, 2009, Magistrate Judge Lowe imformed the defendants that they did not have to respond to any of plaintiff's future motions unless directed by the court to do so. Text entry on CM/ECF, the court's electronic docket system, 5/11/09.

court are taken from the record, including from plaintiff Guerra's statement of material facts and from exhibits before the court and will be construed in favor of the plaintiff.  Guerra had been a teacher, administrator, teacher trainer and educational researcher for 25 years prior to accepting an eighth grade science teaching position at Roberts School for the 2004-2005 school year. Doc. No. 97-1 at p. 3.[2]  The Roberts School student demographic consisted of 54% minority students and 43% non-minority [3] students.  The Roberts teaching staff consisted of fifty non-minority teachers and two minority teachers, Guerra and an African-American female.  During the 2004-2005 school year,  O'Shea was the Roberts School principal and Brennan was the vice-principal.  Warren was a school district teaching assistant. Doc. No. 87-4.

On November 22, 2004, O'Shea evaluated Guerra on his first three months of teaching at Robert School, and at a conference held on December 3, 2004, Guerra was given a positive performance review. Doc. No. 97-1 at p. 5.   From that

---

[2]     The page references in this order are those assigned by the electronic filing system.

[3]     Guerra uses the term "Anglo" throughout his papers to define the non-minority population at the school.  Webster's Dictionary defines "Anglo" in various ways including  "of or belonging to England; of English origin, descent or culture; " and  "short for Anglo-American."  Merriam-Webster's Third New International Dictionary Unabridged, http://mwu.eb.com (February 12, 2010).   The court is hesitant to assume that all students and teachers at Roberts School who are designated as "Anglos" are of English descent, so the court instead uses the term "non-minority" to encompass the referenced population.

date until the date of the alleged incident on April 15, 2005 that led to his

dismissal, Guerra asserts that he continued teaching and preparing his students for

a New York State Science Lab test held on January 19 and 20, a school science

fair on February 17, and a Syracuse University Science Fair on March 15, 2005.

Id. at 6-7.

Guerra met with and maintained contact with the school counselor regarding

difficult students in his class.  The school counselor assisted Guerra with

interventions with the students and their parents.  Id.  Guerra kept detailed records

of his attempts to support difficult students and records of their disruptive

behavior, which eventually led to meetings with the parent.   At one such meeting,

Vice Principal Brennan allegedly complimented Guerra for keeping a detailed

record of the incidents. At a subsequent meeting with a different student, Principal

O'Shea allegedly complimented Guerra on his record keeping of the disruptive

incidents.  Id. at 8.  Guerra had also written referrals and reported to O'Shea

regarding inappropriate sexual behaviors by some students.  Id. at 9.  Guerra

alleges that at weekly meetings held to discuss school issues, the eighth grade staff

was encouraged to write up disruptive students to create a paper trail to take to a

district disciplinary hearing, in order to remove disruptive students from Roberts

School.  At another meeting, Principal O'Shea and Vice Principal Brennan told the

4

eighth grade teachers that In School Suspension Supervisor Warren had been instructed to monitor the classrooms. Id. at 10.

Guerra also contends that there was racial tension at Roberts School, citing intervention by the Onondaga County/Syracuse Commission on Human Rights ("CHR") and a mediator chosen by the Parent Teacher Organization. Despite a request by CHR to Principal O'Shea to organize her staff into groups based on race, with said groups participating in an assessment workshop, Guerra alleges that he, the only male Hispanic teacher, was not allowed to participate. Id. at 12.

Defendants allege that on April 15, 2005, a sexual touching incident ("the incident") occurred between a male and a female student in Guerra's classroom during science class. The incident was reported to O'Shea and Brennan by two students not involved in the incident, both of whom had been previously written up by Guerra for threatening behavior. Id. at 14. On April 29, Warren interviewed the two students who were involved in the alleged incident and the two students who reported it, one of whom was not in Guerra's classroom at the time of the incident. Subsequent to the interview, Warren asked the students to write statements. Id. at 14-15. The student who was allegedly not in the classroom at the time of the incident submitted a written statement with a detailed diagram of the class layout, indicating how the incident occurred, where Guerra was at the

time, where the students were sitting, how the desks were arranged, and so forth. Id. at 15.  On May 3, Guerra was called to a meeting with O'Shea, and was given the statements written by the two students involved in the incident.  One such statement asserted that the incident had not occurred. Id. at 17.

On May 6, 2005, Warren wrote letters graphically describing the incident to the parents of the two students involved, giving those letters to O'Shea to be mailed. Id. at 16.  On May 6, Guerra wrote his response to the incident, asserting that April 15, 2005 was a typical teaching day and nothing out of the ordinary had happened.  On May 17, 2005, O'Shea wrote a memo to the SCSD describing the alleged incident and the steps she had taken to address it.  On that same day, Zarach, the District Math and Science Coordinator, entered Guerra's classroom to conduct an unannounced teacher evaluation.  The evaluation was highly critical of Guerra's performance, suggesting he could use training in certain areas.[4]  On May 27, 2005, Guerra was terminated from his teaching position. Id. at 18.  Guerra was called to a meeting at the district office.  He arrived with two representatives from the State Teachers' Association ("STA"), and the meeting convened with Assistant Director of Personnel Sanzone and Principal O'Shea in attendance.  Sanzone

---

[4]      On July 6, 2005 Guerra asked for a copy of the evaluation via email. Zarach emailed Guerra an unsigned copy on July 8, 200[5]. Id. at 18 (correction of typographical error on year, court cross-checked with original document).

informed Guerra that based on New York Education Law Section 3031, a first year probationary teacher could be removed for no cause, Guerra was no longer permitted to be on school grounds or district grounds, and he was to remove all of his belongings from the classroom on June 8, 2005 between the hours of 5 and 7 p.m.  Guerra was to be paid through July 27, 2005. Id. at 20-22.

On the advice of the STA, Guerra sent a letter to Superintendent Jones on June 3, 2005, asking for reconsideration of his termination.  On June 9, 2005, Guerra received a letter via certified mail from Jones outlining the reasons for Guerra's termination.  The reasons stated were, "1. Failure to establish and maintain a safe and positive learning environment; 2. Failure to take steps to ensure a safe and secure learning environment; and 3. Failure to respond effectively to situations that disrupt the learning environment."  The letter did not mention the sexual touching incident. Id. at 23-24.

On June 13, 2005, Guerra met with Jones to discuss the termination.  By letter dated June 22, 2005, Jones upheld the termination. Id. at 24.  Based on a recommendation by the STA that resignation would afford "better chances for subsequent jobs," Guerra tendered his resignation on July 8, 2005. Id. at 25.  The SCSB accepted Guerra's resignation on July 13, 2005. Id. at 27.

On September 12, 2005, Guerra filed a complaint (SDHR Case No.

7

10107608) with the New York State Division of Human Rights ("DHR"), alleging that his employment with the school district had been terminated because of his race and color. Doc. No. 87-4 at p. 4.  The DHR later determined that Guerra's complaint also encompassed a claim of age discrimination.  Guerra's DHR race, color and age discrimination complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC") as EEOC Charge No. 16G-25-04926. Id.   On September 21, 2006, the DHR dismissed Guerra's discrimination complaint, finding that he was hired and terminated by the same individual, and that he was terminated based on reports that students engaged in sexual contact in his classroom without intervention or observation by him.  The DHR found that there was no evidence Guerra's termination was related to his race, color or age. Id. at pp. 4-5.

On April 13, 2007, Guerra filed a complaint (SDHR Case No. 10117250) with the DHR alleging he had been retaliated against by the school district for filing his discrimination claim.  Guerra's DHR retaliation complaint was cross-filed with the EEOC as EEOC Charge No. 16G-2007-02591.  On August 17, 2007, the DHR issued a no probable cause determination, dismissing the retaliation complaint.  On October 4, 2007, the EEOC issued a dismissal and notice of rights letter ("right to sue") letter in Guerra's  retaliation case, and on October 11, 2007,

the EEOC issued a dismissal and right to sue letter in his discrimination case.

Guerra filed his civil action before this court on January 9, 2008, pursuant to Title

VII and the ADEA.

## II.   Discussion

As a threshold matter, the court notes that Guerra is representing himself in

this matter.  The court is therefore required to consider Guerra's pro se papers

"liberally[,] and interpret them to raise the strongest arguments that they suggest."

Cold Stone Creamery, Inc. v. Gorman, 2010 WL 199993 at * 3 (2d Cir. 2010)

(quoting Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006).

### A.   Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552

(1986); Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d

77, 82 (2d Cir. 2004).  For purposes of this rule, material facts are defined as those

which might affect the outcome of the suit under the governing law. Anderson V.

Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505 (1986).

"[I]n assessing the record to determine whether there is a genuine issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought[.]"  See Security Ins., 391 F.3d at 83, citing Anderson, 477 U.S. at 255.  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), citing Anderson, 477 U.S. at 250-51.

While the initial burden of demonstrating the absence of a genuine issue of material fact falls upon the moving party, once that burden is met, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," see Koch v. Town of Brattleboro, Vermont, 287 F.3d 162, 165 (2d Cir. 2002), citing Fed. R. Civ. P. 56(c), by a showing sufficient to establish the existence of every element essential to the party's case, and on which that party will bear the burden of proof at trial, see Peck v. Public Serv. Mut. Ins. Co., 326 F.3d 330, 337 (2d Cir. 2003), cert. denied, 540 U.S. 1005 (2003).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, supra, at 247-48.  At the summary judgment stage of any litigation, "the trial court's task is

10

carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined ... to issue-finding; it does not extend to issue resolution."  <u>Gallo v. Prudential Residential Serv. P'ship</u>, 22 F.3d 1219, 1224 (2d Cir. 1994).  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  <u>Id.</u>

Courts are "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question."  <u>Schwapp v. Town of Avon</u>, 118 F.3d 106, 110 (2d Cir. 1997).  "Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination."  <u>Id.</u>, <u>citing</u> <u>Gallo v. Prudential Services, Ltd.</u>, 22 F3d 1219, 1224 (2d Cir. 1994) (internal quotes omitted).

### B.    Property Interest in Employment Positions

A probationary teacher has no property interest in his or her employment position.  "Property interests in employment positions are not created by the Constitution but are defined by state law." <u>Dorcely v. Wyandanch Union Free School District</u>, --- F.Supp.2d ----, 2009 WL 3232866 at * 29 (S.D.N.Y. 2009).  "It

is well settled under New York law that a probationary employee has no property rights in his employment and may be terminated for "almost any reason or no reason at all." Castro v. New York City Bd. of Educ., 777 F. Supp. 1113, 1117 (S.D.N.Y. 1990). "Thus, probationary teachers essentially serve at will. A probationary employee who has been dismissed is therefore not entitled to a hearing, unless such an employee can show a violation of statutory law or a constitutionally impermissible purpose underlying the termination." Id.

Under New York State education law, "[t]eachers and all other members of the teaching staff of school districts, including common school districts and/or school districts employing fewer than eight teachers, other than city school districts, shall be appointed by the board of education, or the trustees of common school districts, upon the recommendation of the superintendent of schools, for a probationary period of three years." NY Educ. § 3012 (West 2010). "The service of a person appointed to any of such positions may be discontinued at any time during such probationary period, on the recommendation of the superintendent of schools, by a majority vote of the board of education or the trustees of a common school district." Id.

In determining the process due a person being terminated during a probationary period, state education law holds that "boards of education ... shall

review all recommendations not to appoint a person on tenure, and, teachers  ...

employed on probation by any school district ... as to whom a recommendation is

to be made that appointment on tenure not be granted or that their services be

discontinued shall, at least thirty days prior to the board meeting at which such

recommendation is to be considered, be notified of such intended recommendation

and the date of the board meeting at which it is to be considered." NY Educ.§3031

(West 2010).  "Such teacher ... may, not later than twenty-one days prior to such

meeting, request in writing that he be furnished with a written statement giving the

reasons for such recommendation and within seven days thereafter such written

statement shall be furnished.  Such teacher ... may file a written response to such

statement with the district clerk not later than seven days prior to the date of the

board meeting." Id.

    The court takes judicial notice that Guerra was a probationary teacher at all

times relevant to the case at bar, had no property interest in his job with the

Syracuse City School District, and the SCSD afforded him the minimal due

process that was required under NYS education law.  However, a finding that the

employee has no property interest in his or her job does not preclude a finding of

resultant discrimination. See, e.g., Helmes v. South Colonie Central School

District, 564 F.Supp.2d 137, 146 (N.D.N.Y. 2008).  The court must next determine

13

if any issue of material fact exists regarding whether Guerra was subjected to discrimination pursuant to the federal statutes, i.e., Title VII and the ADEA, upon which he relies.

### C.   Title VII and the ADEA

1.   Generally

Title VII provides that "[i]t shall be an unlawful employment practice for an employer-- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C.A. § 2000e-2 (West 2010).  "To maintain a discrimination action under Title VII, a plaintiff must file a timely charge with the EEOC or the equivalent state agency, receive from that agency a right to sue letter, and commence an action within 90 days after receipt of that letter." Walter v. Hamburg Central School District, 2007 WL 1480965 at * 3 (W.D.N.Y. 2007) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir.1996); Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir.1994). "Similarly, a court may hear only those ADEA claims that are included in a timely filed EEOC charge." Walter v. Hamburg Central School District, 2007 WL 1480965 at * 3.   However, "[u]nlike Title VII, the ADEA does not require that

14

the claimant receive a right to sue letter prior to commencing an action in federal court. However, if the EEOC issues a right to sue letter, the claimant must commence an action within 90 days after its receipt." Id. at FN 3.

Both Title VII and ADEA employment discrimination claims are analyzed under the three-step burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

> Under that framework, the plaintiff first must establish a prima facie case of discrimination, which typically requires a showing that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination. See McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824.
>
> If the plaintiff establishes a prima facie case of discrimination, a presumption of discrimination arises and the burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse employment action. Id. at 802, 93 S.Ct. at 1824.
>
> If the employer produces such a reason, the presumption of discrimination dissipates and the burden shifts back to the plaintiff to show that the asserted legitimate nondiscriminatory reason is pretext for discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 ... (1993); James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir.2000). It is important to emphasize that plaintiff must show that the reason asserted is pretext for

discrimination. In other words, a mere showing of pretext may not be enough as "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated ... remains at all times with the plaintiff." St. Mary's, 509 U.S. at 507... (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, ... (1981)).

Helmes v. South Colonie Central School District, 564 F.Supp.2d at146.

However, "[d]espite the elaborate process set up in McDonnell Douglas, Second Circuit case law makes clear that a court may simply assume that a plaintiff has established a prima facie case and skip to the final step in the McDonnell Douglas analysis, as long as the employer has articulated a legitimate, nondiscriminatory reason for the adverse employment action." Dorcely v. Wyandanch Union Free School Dist., --- F.Supp.2d ----, 2009 WL 3232866 at * 16 (E.D.N.Y. 2009).  If the employer then successfully articulates such a reason, the burden falls back on the plaintiff to proffer evidence "that would permit a reasonable juror to find that a motivating factor for [the employer's] recommendation for his termination was based on his membership in a protected class. Id.

It is axiomatic that individual employees are not liable under Title VII and the ADEA. Courts in this circuit have regularly held, in cases similar to the one at bar, that employees/supervisors are not liable under these statutes.

16

 [I]t is well-established that "individual defendants with
supervisory control over a plaintiff may not be held
personally liable under Title VII." <u>Tomka v. Seiler
Corp.</u>,[5] 66 F.3d 1295, 1313 (2d Cir.1995); see also
<u>Copeland v. Rosen</u>, 38 F.Supp.2d 298, 302
(S.D.N.Y.1999) ("[I]ndividual employees may not be
held personally liable under Title VII, even if they are
supervisory personnel with the power to hire and fire
other employees."). Although the Second Circuit has
never decided this precise issue under the ADEA, it has
previously made clear that it analyzes ADEA claims
within the same framework as Title VII. <u>See</u>, <u>e.g.</u>,
<u>Wanamaker v. Columbian Rope Co.</u>, 108 F.3d 462, 465
(2d Cir.1997). Thus, given this general Second Circuit
guidance and the similarities between the definition of
"employer" under the ADEA and Title VII, this Court
concludes that, as with Title VII, individual defendants
with supervisory control over a plaintiff do not have
personal liability under the ADEA.

<u>McIntyre v. Longwood Central School Dist.</u>, 2008 WL 850263 at *4 (E.D.N.Y.
2008).  <u>See</u> <u>also</u> <u>Brown v. Research Foundation of SUNY</u>, 2009 WL 1504745
(N.D.N.Y. 2009) (individual Defendants cannot be held liable for alleged
violations of Title VII, the ADA, or the ADEA, <u>see</u> <u>Wrighten v. Glowski</u>, 232 F.3d
119 (2d Cir.2000) (ruling individual Defendants are not subject to Title VII
liability).

       In the case at bar, the Syracuse City School District is not a party to this

action.  The named defendants, even if there are supervisory personnel among

them,  are not individually liable under Title VII and the ADEA.  For this reason

_____

       [5]       Abrogated on other grounds by <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742,
118 S.Ct. 2257 (1998) but still good law for the premise that individual defendants with
supervisory control over a plaintiff may not be held personally liable under Title VII.

alone, the court must grant summary judgment.  However, on May 11, 2009, a full

sixteen months after he filed his complaint, Guerra requested Magistrate Lowe

enter an order allowing him to amend his complaint to add the SCSD as a

defendant, to allege counts of conspiracy and spoliation of evidence against the

SCSD and the other fourteen defendants, and for permission to rewrite but not

change his original pleading. Doc. No. 75.  The magistrate addressed Guerra's

motion at the May 11, 2009,  court proceedings, and entered an order on February

16, 2010, denying  Guerra's motion to amend. Doc. No. 103.  Due to Guerra's pro

se status, however, the court will address Guerra's race and age based

discrimination claims at this point to show that said claims would fail even if the

SCSD was a defendant in this action.

Pursuant to the Second Circuit case law set forth above, a court may simply

assume that a plaintiff has established a prima facie case and skip to the final step

in the McDonnell-Douglas analysis, as long as the employer has articulated a

legitimate, nondiscriminatory reason for the adverse employment action.  In the

instant case, the court applies the McDonnell-Douglas framework and takes

judicial notice that Guerra is a member of a protected class; Guerra has provided

ample evidence that he was qualified for the position; and Guerra suffered an

adverse employment action inasmuch as he was terminated from his position.

Guerra alleges, pursuant to Title VII and the ADEA, that the adverse employment

action occurred under circumstances giving rise to an inference of unlawful

discrimination.  Guerra specifically states that he, a 56-year-old experienced,

successful Hispanic teacher was terminated, but "two young Anglo probationary

teachers in their first year" were retained. Doc. No. 97-1 at p. 29.  Guerra also

states that "[t]he teacher who replaced me was also Anglo and therefore made

O'Shea's staff [consist] of 51 Anglo teachers and one minority teacher." Id. at p.

30.  Defendants unequivocally state that during the 2004-2005 school year, the

SCSD terminated the employment of six probationary teachers in addition to

Guerra.  Of these six, four of the terminated probationary teachers were male, two

were female, all were non-minority, and all six were younger than Guerra. Doc.

No. 87-10 at p. 3.  The court finds that even with the addition of SCSD as a

defendant, Guerra's claims would still fail under the McDonnell-Douglas analysis,

as he cannot meet his burden of proof that age or race played any part in his

dismissal.  The court reiterates the DHR finding that the same person hired and

terminated Guerra.  Guerra's employer has articulated a legitimate,

nondiscriminatory reason for the adverse employment action in satisfaction of

federal law.  In addition, New York State law provides that a probationary

employee has no property rights in his employment and may be terminated for

"almost any reason or no reason at all." <u>Castro v. New York City Bd. of Educ.</u>, 777 F. Supp. at 1117.  Accordingly, the court finds that summary judgment is proper under both Title VII and the ADEA.

>           2.      Retaliation

Guerra also alleges retaliation pursuant to Title VII and the ADEA on the part of the defendants for presenting new reasons for his termination after he filed his complaint with the DHR on September 12, 2005.  Guerra asserts that although no complaints had been made against him during the 2004-2005 school year, and at termination none were levied but for the alleged sexual touching incident by students in his classroom,  Brennan subsequently compiled and faxed to Sanzone a writing entitled  "Anecdotal Notes 2004-2005 School Year Mr. Domingo Guerra." Doc. No. 97-1 at p. 30.

Defendants do not address the retaliation charge but assert that the court should not consider this issue because the claims are time barred.  Defendants argue that Guerra did not initiate this action within ninety days of receipt of his "right to sue' letter.  In his original complaint, Guerra states that on October 10, 2007, he received the EEOC Notice of Right to Sue letter on his retaliation claim, which was dated October 4, 2007.  On October 16, 2007, he received the right to sue letter for his race/color and age discrimination claims, dated October 11, 2007.

Accordingly, when Guerra's complaint was filed on January 9, 2008, with a signature date of January 6, 2008, his discrimination claim was timely, but his retaliation claim was filed 91 days after receipt of the right to sue letter.

"It is well-settled that before a plaintiff is entitled to institute a lawsuit under Title VII, the plaintiff must (1) file a timely charge of employment discrimination with the EEOC, and (2) receive and act upon the statutory right to sue notice from the EEOC. See 42 U.S.C. §§ 2000e-5(b), (e) and (f)...." <u>Daniel v. Long Island Housing Partnership, Inc.</u>, 2009 WL 702209 at * 5 (E.D.N.Y. 2009). "[I]n the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." <u>Johnson v. Al Tech Specialties Steel Corp.</u>, 731 F.2d 143, 146 (2d Cir.1984).

Guerra asserts that defendants are stating that Guerra filed on January 9, 2008 and the time bar fell on January 10, 2008, one day later. Doc. No. 97-2 at p. 10. In fact, defendants are arguing that the 90-day period for filing ended on January 8, 2008. Defendants base their calculation on Guerra's complaint, where he unequivocally states the dates he received the right to sue letters. The court concurs with the defendants' assessment that the retaliation claim was untimely filed.

**D.    Stigma Plus standard**

In the case at bar, Guerra also alleges a "stigma plus" claim against the
defendants, arguing that they defamed him on numerous occasions.  Specifically,
in his complaint, Guerra asserts that damaging employment information about him
was made public.  It is seminal law in this country that "there is no constitutionally
protected property or liberty interest in one's reputation. See Siegert v. Gilley, 500
U.S. 226, 233 (1991); Paul v. Davis, 424 U.S. 693, 701 (1976).  However, when
 an individual is defamed or stigmatized in the course of his dismissal from public
employment, he does have a cognizable liberty interest." Hennigan v. Driscoll,
2009 WL 3199220 at * 6 (N.D.N.Y. 2009).

> "Stigma plus" refers to a claim brought for injury to
> one's reputation (the stigma) coupled with the
> deprivation of some "tangible interest" or property right
> (the plus), without adequate process. See Paul v. Davis,
> 424 U.S. 693, 701-02, 711-12 (1976); Neu v. Corcoran,
> 869 F.2d 662, 667 (2d Cir.1989).  Although it is clear
> that defamation "plus" loss of government employment
> satisfies the Paul "plus factor," we have also observed
> that, outside that context, "it is not entirely clear what the
> 'plus' is."

DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003).

However, "[i]t is well settled that where ... the alleged defamation is coupled with
termination of government employment, the 'plus' is satisfied." Piccoli v.
Yonkers Board of Education, 2009 WL 4794130 at * 3 (S.D.N.Y. 2009) (citing

DiBlasio, supra).

"[S]tigma plus is a species within the phylum of procedural due process claims ... [I]n order to bring a successful stigma-plus claim, the plaintiff ... must demonstrate that [some tangible interest] was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma-plus claim." Segal v. City of New York , 459 F.3d 207, 213 (2d Cir. 2006).

A legitimate "stigma-plus" allegation can be utilized to defeat a motion for summary judgment.

> To defeat a motion for summary judgment on a stigma-plus claim, a plaintiff must show four things. First, a plaintiff must show that the government employer made stigmatizing statements about him. See Patterson v. Utica, 370 F.3d 322, 330 (2d Cir.2004). Stigmatizing statements are defined as those that call into question plaintiff's good name, reputation, honor, or integrity. Id. (quoting Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 446 (2d Cir.1980)). Moreover, statements that denigrate the employee's competence as a professional and impugn the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession are stigmatizing. Id. (internal quotations and footnote omitted).
>
> Second, the plaintiff must show that the falsity of these stigmatizing statements is an issue. Id. (citing Brandt v. Bd. of Coop. Educ. Servs., 820 F.2d 41, 43 (2d Cir.1987)); see also Marinaccio v. Boardman, No. 1:02 CV 00831, 2005 WL 928631, *20 (N.D.N.Y. 2005) ("To

the extent Plaintiffs claim the language regarding [the
individual plaintiff's] ban is stigmatizing, same cannot be
the basis for their liberty interest claim because its truth
is not disputed") (internal quotations omitted).

Third, the plaintiff must show that the stigmatizing
statements were made public. Patterson, 370 F.3d at 330.
Statements made only to the plaintiff, and only in
private, ordinarily do not implicate a liberty interest.
Velez v. Levy, 401 F.3d 75, 87 (2d Cir.2005) (internal
quotations and citations omitted).

Finally, the plaintiff must show that the stigmatizing
statements were made in the course of a discharge or
significant demotion. See Patterson, 370 F.3d at 330
("Plaintiff must show the stigmatizing statements were
made concurrently in time to plaintiff's dismissal"); see
also Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d
167, 172 n. 5 (4th Cir.1988) (citations omitted).

Hennigan, 2009 WL 3199220 at * 6.

In the case at bar, Guerra alleges that the SCSD promoted falsehoods

against him and said falsehoods were made public.  Defendants counter that no

stigmatizing statements were made, but if Guerra construed any of the remarks

made in responds to his claims of discrimination as derogatory, such statements

were privileged and not published for public purview. Doc. No. 87-1 at p. 11.  In

addition, defendants state that the "complained of statements were authored and/or

made long after [Guerra's] employment with the District ended...." Id.

Applying the law to the facts of this case, the court finds no defamatory or

stigmatizing statements were made in reference to Guerra, but assuming, arguendo, that the defendants' remarks could be construed as defamatory, they were in no way "published," i.e., made public.   In addition, as stated supra, the complained of statements were not concurrent in time with Guerra's dismissal. Further, even if Guerra could prove all the other elements required for a finding of stigma plus, Guerra had no property interest in his temporary position.  Therefore, there is no "plus" present to allow a finding of stigma plus.

Although the court has construed the evidence in a light most favorable to Guerra, as a non-moving pro se plaintiff, Guerra has not persuaded the court that there remain questions of fact as to whether his race and/or age factored into the defendants' decision to remove him from his classroom and terminate his probationary teaching position.  Accordingly,  the court finds that  reasonable minds could not in fact differ as to the import of the evidence, and a grant of summary judgment is proper in this case.

### F.    Award of Attorney Fees to Defendants/Vexatious Litigation

Defendants have requested, as a prevailing party, an award of attorney's fees pursuant to 42 U.S.C. § 2000e-5(k) (Title VII) and 29 U.S.C. § 626(b) (ADEA).  Due to the large number of letters and motions filed by the plaintiff throughout the course of this action and the unwieldy length of many of them, the

court is inclined to make an inquiry into whether Guerra's profusion of court

filings reaches the threshold for vexatious litigation.  Vexatious litigation is

defined by 28 U.S.C. § 1927, which states that "[a]ny attorney or other person

admitted to conduct cases in any court of the United States ... who so multiplies

the proceedings in any case unreasonably and vexatiously may be required by the

court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct." (West 2010).  The Supreme Court

has weighed in on this issue, stating that "[e]very paper filed with the Clerk of this

Court, no matter how repetitious or frivolous, requires some portion of the

institution's limited resources. A part of the Court's responsibility is to see that

these resources are allocated in a way that promotes the interests of justice." In re

McDonald, 489 U.S. 180, 184 (1989).   "Federal courts have both the inherent

power and the constitutional obligation to protect their jurisdiction from conduct

which impairs their ability to carry out Article III functions." In re Martin-Trigona,

737 F.2d 1254, 1261 (2d Cir. 1984).  Other courts in this circuit have also weighed

in on this issue and the reasoning behind the court's obligation to limit the filing

of unwarranted motions:

> The court again cautions the Plaintiff against filing futile
> and meritless motions ... The Plaintiff's conduct has
> consumed, and continues to consume, the scarce judicial

> resources - including the time of both the personnel
> involved in docketing his motions and the court itself -
> necessary to resolve meritorious claims. ... [i]f the
> Plaintiff fails to comply with the court's directives and
> continues to file meritless motions, he may be subject to
> sanctions, meaning penalties, including but not limited to
> paying the cost of the legal fees necessarily incurred by
> the Defendant to further defend such motions.

Jeffreys v. United Technologies Corp., 2008 WL 4371973 at * 5 (D.Conn. 2008).

Indeed, the magistrate in the instant action responded to Guerra's many filings by

informing defendants that they need not respond to said motions until after the

court decided the current motion for summary judgment.[6]  The 108 docket entries

in the case thus far are largely due to the filing of letters and often frivolous

motions by Guerra and the defendants' necessitated responses.

    Although § 1927 doesn't apply to pro se litigants, "[a] district court may, in

its discretion, impose sanctions against litigants who abuse the judicial process."

Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir.1996).  Accordingly,

considering the many motions and letter briefs filed which were outside the realm

of what is acceptable to the court,  the court finds that it is within the court's

discretion to find that Guerra is personally responsible for the excess costs,

expenses and attorney's fees incurred by the SCSD in this matter.  As Magistrate

---

[6]        Text entry on CM/ECF, the court's electronic docket system, 5/11/09.

Judge Lowe stated in his most recent order, "[p]laintiff is proceeding pro se, and therefore in certain respects his submissions are to be given special solicitude." Doc. No. 103.  The court concurs, and has continually provided additional accommodation to this pro se litigant as the law allows, but when the defendants' rights are impacted and the court's time is squandered, the court must seek to put an end to the voluminous unnecessary filings.  "[A] court's authority to enjoin vexatious litigation extends equally over pro se litigants and those represented by counsel, and a court's 'special solicitude' towards pro se litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights." Lipin v. Hunt, 573 F.Supp. 2d 836, 845 (S.D.N.Y. 2008).

Although the court finds that it is within its discretion to grant attorney's fees in the present action, it declines to do so.  Defendants, who are now adjudged to be the prevailing party in this matter, have not given any indication as to the amount of attorney's fees and costs they seek, other than to assert that they have incurred many thousands of dollars in legal fees and related costs in connection with the defense of this matter and in defense of Guerra's administrative complaints of discrimination brought before the NYS Division of Human Rights and the Equal Employment Opportunity Commission. Doc. 87-1 at p. 28.

28

However, at this stage the court denies defendants' request for attorney's fees without prejudice, allowing them to renew their motion should Guerra's vexatious litigation and frivolous filings continue.

### G.    Remaining Motions

The court has reviewed all pending motions remaining subsequent to the magistrate's order of February 16, 2010.  Because the court will grant defendants' motion for summary judgment, Guerra's motion requesting an order acknowledging plaintiff's record of objection with the # 93 ruling (Doc. No. 94), motion requesting to strike portions or all of Miles Lawlor' affirmation (Doc. No. 95), motion requesting to strike portions or all of William Randolph's affidavit (Doc. No. 96), motion requesting reconsideration/clarification of the #99 order (Doc. No. 101), motion for an order to provide parties a status update for the summary judgment submission papers (Doc. No. 102), and finally, Geurra's recently filed letter motion contesting Magistrate Judge Lowe's recent order (Doc. No. 108) are denied as moot.    Any motions filed with this court by plaintiff from this date forward must comply with the federal and local rules of this court, especially in regard to adherence to page limitations.  These rules are readily

29

available to the plaintiff.[7]

**III.    Conclusion**

For the reasons set forth above, the defendants' motion for summary

judgment (Doc. No. 87) is hereby GRANTED.  However, that portion of the

motion for summary judgment whereby defendants' request attorney's fees is

DENIED without prejudice.  Plaintiff's remaining motions, Doc. Nos. 94, 95, 96,

101, 102 and 107 are DENIED as moot.  The Clerk is instructed to close this case.

SO ORDERED.

March 16, 2010

_____
Neal P. McCurn
Senior  U.S. District Judge

---

[7]        The federal and local rules can be found on the court's external website at
http://www.nynd.uscourts.gov/References.htm and in the Pro Se handbook with which plaintiff
was provided at the commencement of this action. See Doc. No. 4.